J-S11032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: E.A.I., et al., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., | : | |
| | : | |
| Appellant | : | No. 899 MDA 2014 |

Appeal from the Order entered on April 3, 2014
in the Court of Common Pleas of Clinton County,
Orphans' Court Division, No. 157-11 OC

BEFORE: PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 26, 2015**

R.F. ("Former Trustee" or "R.F."), original trustee of the *inter vivos* trust ("Trust") for the benefit of E.A.I., R.M.I., and Ry.M.I. (collectively "the beneficiaries"), appeals from the Order surcharging Former Trustee in the amount of $8,798.00. We affirm.

The Orphans' Court has set forth the relevant underlying factual and procedural history in its Opinion, which we adopt for the purpose of this appeal.[1] **See** Orphans' Court Opinion, 4/3/14, at 1-4.

---

[1] J.L.R., the substitute trustee, sought a limited surcharge period because Former Trustee had comingled the Trust funds with her personal funds, and it was not possible to verify the Trust funds prior to November 1, 2011. N.T., 2/25/14, at 15-16. With regard to the rents in question, J.L.R. stated that while some of the rents were collected, a total of $7,798.00 in rental income was not distributed to the Trust. **Id**. at 5-15. However, following Former Trustee's removal, she turned over $1,654.56 in Trust assets to J.L.R. **See** 2013 Accounting, 1/15/14.

Following a hearing, the Orphans' Court entered an Order surcharging Former Trustee in the amount of $8,798.00. Former Trustee filed Exceptions, which the Orphans' Court denied. Thereafter, Former Trustee filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Former Trustee raises the following questions for our review:

A. Whether the [Orphans' Court] committed an error of law/abuse of discretion in awarding a surcharge against [Former Trustee] when there was no actual loss suffered by the Trust?

B. Whether the [Orphans' Court] committed an error of law/abuse of discretion in failing to credit [Former Trustee] for out-of-pocket expenditures made for the benefit of the Trust?

Brief for Appellant at 6.

Our standard of review of Orphans' Court decisions is as follows:

The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that [the] Orphans' Court has derived from those facts.

*In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa. Super. 2004) (citation omitted).

We will address Former Trustee's claims together. Former Trustee contends that the Orphans' Court erred in granting the Petition for surcharge against her where there was no evidence that her actions caused the Trust an actual loss. Brief for Appellant at 11, 14. Former Trustee argues that while she failed to include the rents in question in the accounting of the Trust, such poor record keeping does not establish actual loss. *Id*. at 11-12. Former Trustee also claims that the evidence established that the beneficiaries' mother had directed the renters of the property in question to send rent payments to her and not to Former Trustee. *Id*. at 13-14. Former Trustee asserts that to make up for losses by the Trust, she would provide her own money to the Trust. *Id*. at 12-13, 14; *see also id*. at 13 (wherein Former Trustee argues that the Trust operates at a yearly loss and that the losses were covered by Former Trustee's personal funds).

Former Trustee additionally contends that the trial court abused its discretion in failing to credit her with the out-of-pocket expenditures, totaling over $9,000, made for the benefit of Trust. *Id*. at 14-15. Former Trustee points out that she also paid $268.52 in property taxes on Trust property in 2013. *Id*. at 14.

> The primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal. The standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate.

> Surcharge is the remedy when a trustee fails to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care.
>
> The court must find the following before ordering a surcharge: (1) that the trustee breached a fiduciary duty and (2) that the trustee's breach caused a loss to the trust. Where there is no breach of fiduciary duty, there is no basis for a surcharge. Even if there is a breach of duty, however, where there is no loss, there is no basis for a surcharge.

*In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010) (citations, quotation marks, and footnote omitted).

> In general, one who seeks to surcharge a trustee bears the burden of proving that the trustee breached an applicable fiduciary duty. However, when a beneficiary has succeeded in proving that the trustee has committed a breach of duty and that a related loss has occurred, … the burden of persuasion ought to shift to the trustee to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. …[A]s between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty.

*In re Dentler Family Trust*, 873 A.2d 738, 745 (Pa. Super. 2005) (citation omitted).

> [W]hen determining the proper surcharge to be imposed, we are guided by the Restatement (Second) of Trusts. …
>
> Restatement § 204 provides that a trustee is not liable for a loss in value of the trust property or for a failure to make a profit that does not result from a breach of trust. Conversely, Restatement § 205 provides, "If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." Comment (a) explains that in choosing among these three remedies, the beneficiary has the option of

- 4 -

> pursuing the remedy that will place him in the position in which he would have been if the trustee had not committed the breach.

*In re Scheidmantel*, 868 A.2d 464, 493 (Pa. Super. 2005) (citation omitted). Furthermore, "[e]valuating the reasonableness of the amount of a surcharge is within the province of a trial court. Absent an abuse of discretion, we will not disturb a trial court's finding." *In re Estate of Brown*, 30 A.3d 1200, 1206 (Pa. Super. 2011) (citation omitted).

The Orphans' Court found that Former Trustee failed to distribute to the Trust the rents in question between November 1, 2011, and December 31, 2012, in the amount of $7,798.00, and did not include the rents in the November 16, 2012 accounting of the Trust. *See* Orphans' Court Opinion, 4/3/14, at 4-5. The Orphans' Court's finding is supported by the record. *See* N.T., 2/25/14, at 5-15 (wherein J.L.R., substitute trustee, detailed her reconstruction of the payments from November 1, 2011, through December 31, 2012, and analyzed various bank accounts to determine that $7,798.00 of anticipated rent payments were not collected and/or deposited with the Trust); *id*. at 27-31 (wherein Former Trustee states that she received all of the checks and payments between November 2011 and October 2012, but failed to account for the payments); *id*. at 38 (wherein Former Trustee admits that she collected rents between November 2011 and December 2012, but was unsure of the exact amount collected). The Orphans' Court further determined that, based upon the evidence presented, Former Trustee should have charged her son, T.E.S., $1,000 in rent for living in a

mobile home on trust property. *See* Orphans' Court Opinion, 4/3/14, at 5; *see also* N.T., 2/25/14, at 18-19 (wherein J.L.R. detailed fair market rental value of the property where Former Trustee's son lived); N.T., 12/4/12, at 7 (wherein Former Trustee's son, T.E.S., admitted that he did not pay rent on the rental property).

Although the Orphans' Court considered Former Trustee's testimony that she used her personal funds to pay Trust expenses and that her payments should offset any surcharge, the Court found that Former Trustee's testimony was not credible. *See* Orphans' Court Opinion, 6/16/14, at 1-2; *see also In re Estate of Cherwinski*, 856 A.2d at 167 (stating that we will not disturb the findings of fact predicated on the credibility determinations of an Orphans' Court judge absent an abuse of discretion or a lack of evidentiary support). The Orphans' Court also pointed out that the purported property tax payment in 2013 by Former Trustee "occurred outside the period that the [substitute] [t]rustee was requesting a surcharge: *i.e.*[,] November 1, 2011[,] through December 31, 2012." Orphans' Court Opinion, 6/16/14, at 2.

Based upon the foregoing, we conclude that the Orphans' Court's finding that Former Trustee's actions caused a loss of $8,798.00 is supported by competent evidence and the record is free of legal error. *See In re Estate of Cherwinski*, 856 A.2d at 167. Thus, the Orphans' Court properly surcharged Former Trustee because she breached her fiduciary

duties in failing to collect the relevant rents from the Trust property, and in failing to adequately account for the rent in the 2013 Accounting. *See In re Dentler Family Trust*, 873 A.2d at 745; *see also In re Scheidmantel*, 868 A.2d at 493.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2015

IN THE COURT OF COMMON PLEAS OF CLINTON COUNTY, PENNSYLVANIA
ORPHANS' COURT

IN THE MATTER OF:                        )
                                         ) NO. 157 - 11 OC
THE INTER VIVOS TRUST f/b/o              )
████████████████████, E. A. I.          )
████████████████████, and R. M. I.      )
████████████████████ Ry. M. I.          )

**OPINION AND ORDER**

**Procedural History**

This matter initially came before the Court when the settler of the trust, ████████ J. A. F.
a/k/a J. A. I. ████████████████████, hereinafter referred to as ██████ J. I. ," filed a Petition for

Citation to Show Cause Why the Trustee Should File an Account on September 26, 2011. A

hearing on said Petition was held on November 8, 2011, at which the Court directed ████████ R. F.

████████, Trustee of the Inter Vivos Trust created January 29, 2004, for the benefit of ████ E. A. I.

████████, ████████████ R. M. I., and ████████████ Ry. M. I. to file an account in twenty days.

The account was to include all transactions from January 19, 2004, through the date of filing the

account. The Court in a separate Order also directed an escrow account to be established

concerning three checks being held by ████████ J. I. . The parties having not been able to resolve

the matter, a further hearing was scheduled for December 4, 2012. On November 16, 2012,

Trustee ████████ R. F. filed her account of said trust. Following a hearing on December 4,

2012, then President Judge J. Michael Williamson removed ████████ R. F. as the trustee and

appointed ████████ J. L. R. as substitute trustee. A Petition for Surcharge against former trustee,

████████ R. F., was filed on November 1, 2013, by the substitute trustee, ████████ J. L. R. . A

CRAIG P. MILLER
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURTHOUSE
LOCK HAVEN, PA 17745

FILED
CLINTON COUNTY, PA
2014 APR 3 AM 11 48
JENNIFER L. HOY ACTING
RECORDER OF DEEDS

hearing concerning that Petition for Surcharge was held before this Court on February 25, 2014. Testifying at that hearing were J.L.R. ████████ and R.F. ████████.

To understand the complicated nature of this trust, this Court will recite the facts as best it can determine. J.I. ████████ is the mother of E.A.I ████████, R.M.I. ████████, and Ry. M.I. ████████, who were all minors when the trust was initiated on January 19, 2004. E.A.I. ████████ was born May 13, 1995, R.M.I. ████████ was born December 17, 1996, and Ry. M.I ████████ was born November 21, 1998. The original trustee of the trust was R.F. ████████. R.F. ████████ is the mother of J.I ████████ and the maternal grandmother of E.A.I ████████, R.M.I. ████████, and Ry. M.I. ████████. On January 19, 2004, J.I ████████, joined by her spouse and father of the minor children, T.R.I. ████████, conveyed real estate to the trust which was described as follows:

a. A certain tract of land situated in West Keating Township, Clinton County, Pennsylvania, approximately 82.5 acres, as more particularly described in a Deed dated January 19, 2004, and recorded in Clinton County at Clinton County Instrument No. 2004-00325.

b. A certain tract of land situated in West Keating Township, Clinton County, Pennsylvania, approximately 106 acres, as more particularly described in a Deed dated January 19, 2004, and recorded in Clinton County at Clinton County Instrument No. 2004-00326.

c. Three parcels of land situated in Karthaus Township, Clearfield County, Pennsylvania, as more particularly described in that Deed dated January 19, 2004, and recorded in Clearfield County at Clearfield County Instrument No. 2004-00967.

d. A certain parcel of land situated in the Village of Karthaus, Karthaus Township,

CRAIG P. MILLER
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURTHOUSE
.OCK HAVEN, PA 17745

Clearfield County, Pennsylvania, as more particularly described in a Deed dated January 19, 2004, and recorded in Clearfield County at Clearfield County Instrument No. 2004-00968.

The above described properties included numerous camp sites subject to leases for which ground rents were due and owing to the trust. It is the issue of these ground rents that were to be collected by the original trustee, R.F. ▮▮▮▮▮▮, that are at issue and which caused then President Judge J. Michael Williamson to remove said R.F. ▮▮▮▮▮▮ as trustee and appoint J.L.R. ▮▮▮▮▮▮ as substitute trustee on December 4, 2012. Also at issue is property known as Lot No. 1 in the 82.5 acre parcel located in West Keating Township, Clinton County, Pennsylvania. Said parcel had been occupied by T.E.S. ▮▮▮▮▮▮. T.E.S. ▮▮▮▮▮▮ is the half-brother of J.I. ▮▮▮▮▮▮ and the son of R.F. ▮▮▮▮▮▮. He is the maternal uncle of the beneficiaries of the trust, E.A.I. ▮▮▮▮▮▮, R.M.I. ▮▮▮▮▮▮, and Ry.M.I. ▮▮▮▮▮▮. This Court has addressed T.E.S. ▮▮▮▮▮▮ occupation of the camp site known as Camp Site No. 1 in an action for ejectment to No. 336-2013. This Court took judicial notice of that proceeding and all evidence and testimony received during that proceeding. This Court issued an Opinion and Order on December 30, 2013, ejecting T.E.S. ▮▮▮▮▮▮ from the property known as Camp Site No. 1 which has a specific address of 5810 Keating Mountain Road, Pottersdale, Pennsylvania. This Court further found that a mobile home that was located on said site was the property of the trust.

In the present proceeding concerning the Petition for Surcharge against former trustee, R.F. ▮▮▮▮▮▮, filed November 1, 2013, by the substitute trustee, J.L.R. ▮▮▮▮▮▮, there are two areas in which substitute trustee desires the former trustee to be surcharged. The substitute

CRAIG P. MILLER
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURTHOUSE
LOCK HAVEN, PA 17745

trustee desires the former trustee to be surcharged due to the loss of the rent that should have been collected or was collected by the former trustee from November 1, 2011, through December 31, 2012, which amounts to $7,798.00. The second issue is the failure to collect rent from the said T.E.S. ███████████ for a period from November 1, 2011, through December 31, 2012, which would be $1,000.00 for the camp lot per year and $2,500.00 for the mobile home. It should be noted that the substitute trustee specifically limited her request for surcharge from the date of November 1, 2011, through December 31, 2012. Therefore, the Court will not expand that date.

## Discussion

Section 7771 of the PEF Code directs that a trustee shall administer the trust in good faith and in accordance with its provisions and purposes and the interest of the beneficiaries and also in accordance with applicable law.

Section 7772 directs that a trustee owes a duty of loyalty by administering the trust solely in the interest of the beneficiaries. Further, Section 7774 requires that a trustee administer the trust as a prudent person would by considering the purposes, provisions, distributional requirements, and other circumstances of the trust by exercising reasonable care, skill, and caution.

As noted, Judge Williamson removed the original trustee, R.F. ███████████, by Order of December 4, 2012, and appointed J.L.R. ███████████. It is clear that the trustee did not collect all the rents during the time period of November 1, 2011, through December 31, 2012, which are not accounted for in the accounting filed by the original trustee on November 16, 2012. This Court

CRAIG P. MILLER
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURTHOUSE
LOCK HAVEN, PA 17745

4

finds that there existed $5,600.00 in rent due from November 1, 2011, through December 31, 2012, that the original trustee did not collect or did not list in the accounting. Additionally, the original trustee received $500.00 in a check known as the "Rippey check," along with $1,698.00 in checks and payments that original trustee, R.F. ▮▮▮▮▮▮▮▮ admitted that the original trustee received which were not listed in the accounting. This totals $7,798.00 of rent received the period of November 1, 2011, through December 31, 2012, that was not accounted for by the original trustee.

Substitute trustee, as indicated above, also seeks to surcharge the original trustee a rental amount that the substitute trustee believes is appropriate for T.E.S. ▮▮▮▮▮▮▮▮▮▮ occupancy of Camp Site Lot No. 1 located in the 82.5 acre parcel, along with the occupancy of the mobile home which is located there. The substitute trustee claims the yearly rental amount that should be paid is $1,000.00 for the lot and $2,500.00 for the mobile home. This Court, in its ejectment proceedings involving this property and T.E.S. ▮▮▮▮▮▮▮▮ to No. 336-2013, reviewed the substantial evidence regarding both the lot and the mobile home. Although the Court will accept the $1,000.00 per year for the annual rent of the camp site, this Court deems the mobile home to be absolutely worthless and will not surcharge the original trustee for this amount. This Court will issue an appropriate Order.

CRAIG P. MILLER
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURTHOUSE
LOCK HAVEN, PA 17745